IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CRYSTAL LOUISE H.,

        Plaintiff,

        vs.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,[1]

        Defendant.

Civil Action No. ADC-18-3922

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On December 19, 2018, Crystal Louise H.. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 14, 19), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 19) are DENIED, the decision of the SSA is REVERSED IN PART, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

## PROCEDURAL HISTORY

On January 22, 2014, Plaintiff filed a Title II application for DIB, alleging disability beginning on January 1, 2014. Plaintiff also filed a Title XVI application for SSI on March 15,

---

[1] Currently, Andrew Saul serves as the Commissioner of the Social Security Administration.

2014, alleging disability beginning on January 1, 2014. Her claims were denied initially and upon

reconsideration on October 2, 2014 and November 23, 2015, respectively. Subsequently, on

December 15, 2015, Plaintiff filed a written request for a hearing and, on December 15, 2016, an

Administrative Law Judge ("ALJ") presided over a video hearing. A separate ALJ presided over

a supplemental video hearing on December 7, 2017. On March 27, 2018, the ALJ rendered a

decision ruling that Plaintiff "ha[d] not been under a disability within the meaning of the Social

Security Act [(the "Act")] from January 1, 2014, through the date of this decision." ECF No. 11

at 22. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on October

25, 2018, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered

by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims*

*v. Apfel*, 530 U.S. 103, 106–07 (2000).

On December 19, 2018, Plaintiff filed the Complaint in this Court seeking judicial review

of the SSA's denial of her disability application. On May 7, 2019, Plaintiff filed a Motion for

Summary Judgment, and Defendant filed a Motion for Summary Judgment on September 5, 2019.

Plaintiff filed a response to Defendant's Motion on September 26, 2019.[2] This matter is now fully

briefed, and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. §

405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted).

The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's

review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported

---

[2] On September 30, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the
United States District Court for the District of Maryland and upon consent of the parties, this case
was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

To be eligible for DIB and SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration

requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R.

§ 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1),

404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, regarding Plaintiff's DIB claim, the ALJ preliminarily found that Plaintiff met the insured status requirements of Title II of the Act through June 30, 2017. ECF No. 11 at 24. The ALJ then performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since January 1, 2014, the alleged onset date." *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical degenerative disease; bilateral knee osteoarthritis; lupus; Factor V Leiden Deficiency; connective tissue disorder; depression; and mood disorder." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, the ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] could not climb ladders, ropes or scaffolds, could occasionally climb ramps and stairs, could frequently stoop and balance, but could not crouch, crawl, kneel, and bend. [Plaintiff] would be limited to frequent use of her upper extremities to push, pull, handle or reach. [Plaintiff] should not be exposed to temperature extremes, direct sunlight, heights, poor ventilation, or be in the proximity of dangerous machinery. [Plaintiff] could perform a low stress job, which is a job that requires occasional decision-making, occasional judgments, and occasional changes in the work setting. [Plaintiff] should be limited to low stress jobs that are goal oriented rather than oriented toward production pace or on an assembly line. [Plaintiff] should be limited to low stress jobs requiring simple, routine, repetitive instructions.

*Id.* at 27–28. The ALJ then determined that Plaintiff had past relevant work as an office coordinator/office manager. *Id.* at 32. Finally, at step five, the ALJ found, "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that

7

Plaintiff "ha[d] not been under a disability, as defined in the [Act], from January 1, 2014, through the date of this decision." *Id.* at 33.

<h2 style="text-align:center">DISCUSSION</h2>

Plaintiff raises five allegations of error on appeal: (1) that counsel for Plaintiff did not receive a complete record during the appeals process; (2) that the ALJ improperly obtained answers to interrogatories from a medical expert ("ME"); (3) that the ALJ erred by finding Plaintiff's ulnar neuropathy and fibromyalgia are not "severe" impairments; (4) that the ALJ's RFC finding is not supported by substantial evidence; and (5) that the ALJ improperly considered the vocational expert's ("VE") testimony. The Court agrees with Plaintiff's third argument and part of her fifth argument, but the remaining arguments lack merit. Each alleged error is addressed below.

**A. Plaintiff was not prejudiced by the alleged absence of the digital recording from the supplemental hearing in the claim file.**

Plaintiff first argues that her counsel was not provided with a complete record of her claim before filing an appeal to the Appeals Council. ECF No. 14-1 at 4–5. Plaintiff alleges that when her counsel downloaded the claim file to prepare for her appeal on April 19, 2018, the file did not contain an audio recording of the supplemental hearing. *Id.* at 4. She contends this was a reversible error because it prejudiced her counsel while preparing her appeal to the SSA Appeals Council.

Plaintiff bases her argument on the Hearings, Appeals, and Litigation Law Manual ("HALLEX") Section I-2-6-40(B)(3). HALLEX I-2-6-40(B)(3) provides that a hearing assistant or verbatim hearing reporter must verify that a digital recording of a hearing was uploaded to the Certified Electronic Folder. 1993 WL 643028 (Aug. 29, 2014). Notably, HALLEX is a claims manual and is not binding on the SSA or this Court. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (finding that a claims manual is not a regulation, has no legal force, and does not bind the SSA); *Theil v. Comm'r, Soc. Sec.*, BPG-16-3150, 2017 WL 2954774, at *1 (D.Md. June 23, 2017)

8

("HALLEX does not have the force and effect of law . . . [and] is not binding on the Commissioner." (quoting *Cavers v. Colvin*, TMD-13-632, 2014 WL 4662515, at *7 (D.Md. Sept. 17, 2014) (alterations in original))).

Plaintiff alleges that the digital recording was not uploaded to the file, while Defendant alleges the recording was uploaded on December 7, 2017, the date of the supplemental hearing. ECF No. 19-1 at 4 n.1. Regardless of whether the recording was in the file when Plaintiff's counsel downloaded it, Plaintiff has failed to demonstrate she was prejudiced by this alleged omission, because she does not allege the claim file was also missing a transcript of the supplemental hearing on which Plaintiff's counsel could have relied. Accordingly, this error is harmless and is not a basis for remand.

**B. Plaintiff waived her objection to the absence of the letter to the ME in the record by failing to raise it at the supplemental hearing.**

Plaintiff then argues that the ALJ erred by accepting medical opinion testimony from an ME without including a copy of the letter to the ME in the exhibit file and by accepting the substance of the interrogatory answers from the ME. ECF No. 14-1 at 5–7. Plaintiff bases her argument in part on HALLEX Section I-2-5-42(C). As established above, HALLEX does not have the force of law and is not binding on the SSA or on this Court. *See supra* Part A.

HALLEX I-2-5-42(C) requires that SSA hearing office staff send a letter with the interrogatories to the ME and add the letter to the claims file as an exhibit. 1994 WL 637376 (Apr. 1, 2016). If the ALJ or other SSA staff fails to comply with I-2-5-42 and the claimant wishes to object, she must do so at a supplemental hearing. *Hibbard v. Colvin*, No. 13-165-DLB, 2014 WL 349379, at *3 (E.D.Ky. Jan. 31, 2014) (citing *Gibbs v. Comm'r, Soc. Sec.*, No. 12-cv-14643, 2013 WL 5423612, at *13 (E.D.Mi. Sept. 26, 2013)). If the plaintiff does not object to the HALLEX

violation at a supplemental hearing, the objection is deemed waived. *Id.* at \*3–4 (citing *Gibbs*, 2013 WL 5423612, at \*13).

In this case, Plaintiff is correct that the letter accompanying the interrogatories sent to the ME are absent from the claim file. On April 26, 2017, Plaintiff disputed the ME's responses to interrogatories and requested a supplemental hearing. ECF No. 11 at 392. The hearing was scheduled for December 7, 2017, and gave Plaintiff the opportunity to object to and provide evidence contrary to the ME's answers. *Id.* at 41. At the supplemental hearing, the ALJ and Plaintiff's attorney discussed the exhibit containing the ME's answers to interrogatories, *see id.* at 76–77, but neither Plaintiff nor her attorney objected to the accompanying letter's absence from the record. Because Plaintiff did not object to the HALLEX violation at the supplemental hearing, the Plaintiff waived the objection. *Hibbard*, 2014 WL 349379, at \*3. Accordingly, the letter's absence from the record is not a basis for remand.

## C. The ALJ Erred at Step Two of the Sequential Analysis.

Plaintiff next argues that her ulnar neuropathy and fibromyalgia qualify as severe impairments, and the ALJ erred in failing to adjudicate the impairments in his decision. ECF No. 14-1 at 7–12. The Court agrees the ALJ erred at step two.

At step two of the sequential evaluation, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is considered "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). During step two, "[i]f the [ALJ] finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps." *Rivera v. Astrue*, No. CBD-12-1095, 2013 WL 4507081, at \*7 (D.Md. Aug. 22, 2013) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). "However, if a claimant does

10

have a severe impairment or combination of impairments, the ALJ must consider the effects of *both the severe and non-severe impairments* at the subsequent steps of the process, including the determination of RFC." *Id.* (emphasis in original). "If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant." *Id.* (citing *Thomas v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-3587, 2013 WL 210626, at *2 (D.Md. Jan. 17, 2013) (finding harmless error where the ALJ continued with sequential evaluation process and considered both severe and non-severe impairments)). Prejudice may exist, however, "where the ALJ improperly discounts or ignores evidence of the allegedly severe impairment at the other steps of the sequential analysis." *Fountain v. Astrue*, CBD-11-1884, 2013 WL 145873, at *4 D.Md. Jan. 11, 2013).

### 1. The ALJ erred by failing to consider Plaintiff's ulnar neuropathy in subsequent steps after classifying it as a non-severe impairment.

In step two of the analysis, the ALJ found the following severe impairments: "cervical degenerative disease; bilateral knee osteoarthritis; lupus; Factor V Leiden Deficiency; connective tissue disorder; depression; and mood disorder." ECF No. 11 at 24. The ALJ also found the following non-severe impairments: "ulnar neuropathy, lumbar degenerative disc disease, transient ischemic attack, and migraines." *Id.* The ALJ found that Plaintiff's ulnar neuropathy was not a severe impairment because "pain management notes indicate [Plaintiff's] reported improvement in this condition with injections." *Id.*

Here, although the ALJ classified Plaintiff's ulnar neuropathy as a non-severe impairment, he found other impairments severe, allowing the inquiry to proceed. After step two, however, the ALJ failed to mention Plaintiff's ulnar neuropathy at any other stage of his sequential analysis. While the ALJ's declination to classify Plaintiff's ulnar neuropathy as a severe impairment was not prejudicial to Plaintiff, the ALJ's failure to consider the ulnar neuropathy at subsequent steps

11

was in error. *Fountain*, 2013 WL 145873, at *4. Accordingly, the ALJ did not properly evaluate Plaintiff's ulnar neuropathy after determining it was a non-severe impairment, and the Court must remand the case to SSA for further analysis.

### 2. *The ALJ erred by omitting Plaintiff's fibromyalgia from his entire analysis.*

When a claimant seeks a disability finding based in whole or in part on fibromyalgia, Social Security Ruling ("SSR") 12-2p instructs that the ALJ must properly consider the claimant's symptoms. 2012 WL 3104869, at *2 (July 25, 2012). A claimant's allegation of fibromyalgia must be analyzed at each step of the sequential evaluation process, like any other impairment. *Id.* at *5–6; *see also Exum v. Astrue*, SAG-11-2073, 2012 WL 5363445, at *2 (D.Md. Oct. 26, 2012) (finding that the ALJ's failure to classify plaintiff's fibromyalgia as severe "infected" the ALJ's subsequent analysis, particularly the RFC finding that "reports of pain exceed the objective findings" when fibromyalgia could have explained the discrepancy). Furthermore, when an ALJ fails to classify a plaintiff's impairment as either severe or non-severe, and does not discuss this omission, the ALJ has committed a reversible error. *Boston v. Barnhart*, 332 F.Supp.2d 879, 885 (D.Md. 2004) (finding that the ALJ erred "by failing to explain why she did not consider obesity an impairment, severe or not severe, at step two, and failed to consider the plaintiff's obesity at the remaining steps").

Unlike Plaintiff's ulnar neuropathy diagnosis, the ALJ did not mention Plaintiff's fibromyalgia diagnosis at step two or in any other section of his decision—despite the diagnosis appearing dozens of times throughout Plaintiff's medical records. In addition to appearing throughout Plaintiff's medical records, Plaintiff's fibromyalgia was one of the main impairments on which she based her entire disability petition. *See* ECF No. 11 at 305 (responding to a prompt asking Plaintiff to list all physical or mental conditions with "lupus," "fibromyalgia," "depression,"

and "anxiety"). Because the ALJ failed to classify Plaintiff's fibromyalgia as either a severe or non-severe impairment and failed to justify this omission, the Court must remand the case to the SSA for further analysis.

**D. The ALJ's RFC finding was supported by substantial evidence.**

Plaintiff then argues that the ALJ's RFC finding is not supported by substantial evidence, because the ALJ's RFC limitations contradicted the medical evidence in the record and does not include a logical discussion of his conclusions contrary to *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019). ECF No. 14-1 at 12–15. The Court disagrees that the ALJ erred in his RFC finding.

In determining RFC, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. §§ 404.1545(a), 416.945(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL 374184, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

SSR 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that

the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and

assess his or her work-related abilities on a function-by-function basis, including the functions'

listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional

levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio v. Colvin*, 780 F.3d

632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p, 1996 WL 374184). The Fourth

Circuit, however, found that a per se rule requiring remand when an ALJ does not perform "an

explicit function-by-function analysis" is inappropriate, because "remand would prove futile in

cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting

*Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Instead, the Court found "[r]emand may

be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions,

despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis

frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177) (alterations in original).

Plaintiff specifically points to the Fourth Circuit's opinion in *Thomas v. Berryhill* as a basis

for remand. In that case, the Fourth Circuit found that the ALJ failed "to provide a logical

explanation of how she weighed the record evidence and arrived at her RFC findings." *Thomas*,

916 F.3d at 311. The court identified three components of a proper RFC analysis: "(1) evidence,

(2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation,

is just as important as the other two." *Id.* The court in *Thomas* identified four ways in which the

ALJ erred in her RFC analysis: (1) by neglecting to draw explicit conclusions about how the

plaintiff's mental limitations affected her ability to work for a full workday; (2) by failing to

"sufficiently explain how she weighed significant evidence related to [the plaintiff's] mental-

health treatment"; (3) by stating the plaintiff's RFC before going through a function-by-function

analysis; and (4) by failing to clarify her finding that the plaintiff "could not perform work 'requiring a production rate or demand pace'" by defining what she meant by those terms. *Id.* at 312.

In this case, the ALJ did not make errors analogous to those in *Thomas* in his RFC analysis. The ALJ thoroughly recounted Plaintiff's medical treatment history, and he was clear about how much weight he afforded various exhibits and records. *See* ECF No. 11 at 30–32 (explaining how Plaintiff's reactions to treatment informed his finding that she needed to work in a sedentary position, then detailing the weight he afforded each expert and physician's testimony). The ALJ directly addressed Plaintiff's mental health history, *id.* at 30, and listed which exhibits he considered and did not consider in his finding, *id.* at 32. While the ALJ did err in failing to consider Plaintiff's ulnar neuropathy and fibromyalgia in his RFC analysis, *see supra* Part C, he did not further err by failing to explain the evidence he did consider in arriving at his ultimate finding. The RFC finding, therefore, was supported by substantial evidence. Accordingly, the ALJ did not err in his RFC analysis, other than to the extent discussed in Part C of this opinion.

### E. The ALJ erred by neglecting to resolve a conflict between the VE's testimony and the DOT, but committed harmless error by failing to qualify the VE on the record.

Finally, Plaintiff argues there is a conflict between the VE's testimony and the Dictionary of Occupations Titles ("DOT"). She argues that the occupations the VE recommended conflict with her RFC, and that the VE was improperly questioned on the record. ECF 14-1 at 16–17. The Court agrees that some of the VE's recommended jobs conflict with Plaintiff's RFC, but disagrees that the VE was improperly questioned on the record.

#### 1. The ALJ erred by failing to identify and resolve a conflict between the VE's recommended jobs and Plaintiff's RFC.

Plaintiff argues that the VE's recommendation that she could perform jobs as a lens inserter (DOT #713.687-026), a label pinker/cutter (DOT #585.685-062), or an addresser (DOT #209.587-010) conflicts with her RFC. ECF No. 14-1 at 16.

Social Security Ruling 00-4p clarifies 20 C.F.R. § 404.1566, which states, without more, that ALJs will consider both the DOT and VE testimony to determine whether a Social Security claimant can find work suited to her RFC. SSR 00-4p explains that its purpose is to require the ALJ (not the VE) to "[i]dentify and obtain a reasonable explanation" for conflicts between the VE's testimony and the DOT, and to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). The Ruling then proceeds to require that the ALJ undertake exactly these responsibilities. First, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT;" and second, "[i]f the VE's . . . evidence appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* at *4. Notably, this second requirement is so independent of the first that it does not rest on the VE's identification of a conflict. Rather, SSR 00-4p directs the ALJ to "resolve the conflict by determining if the explanation given by the VE . . . is reasonable," *id.* at *2, and to "explain the resolution of the conflict irrespective of how the conflict was identified," *id.* at *4. Even if the VE states there is no conflict between the evidence and the DOT, the ALJ must still recognize and resolve conflicts that are not immediately obvious. *Pearson v. Colvin*, 810 F.3d 204, 209–10 (4th Cir. 2015).

Plaintiff again relies on *Thomas v. Berryhill* to support her allegation the VE's testimony and the ALJ's subsequent findings conflict with the DOT. In that case, the ALJ found in her RFC analysis that the plaintiff was limited to "short, simple" instructions. *Thomas*, 916 F.3d at 314. All the jobs the VE recommended, however, required the plaintiff be able to follow "detailed but

uninvolved" instructions. *Id.* The Fourth Circuit found that the discrepancy between the plaintiff's RFC and the reasoning level required by the VE's recommended jobs was an "apparent conflict" justifying remand. *Id.* at 314.

In this case, the ALJ found in his RFC determination that Plaintiff is "limited to low stress jobs requiring simple, routine, repetitive instructions." ECF No. 11 at 28. The VE testified Plaintiff could perform the requirements of a lens inserter, a label pinker/cutter, or an addresser. *Id.* at 33, 94–95. While a lens inserter's reasoning level only requires Plaintiff to follow "simple one- or two-step instructions," DICOT 713.687-026, 1991 WL 679273 (Jan. 1, 2016), both a label pinker and an addresser's reasoning levels require Plaintiff to follow "detailed but uninvolved . . . instructions," DICOT 585.685-062, 1991 WL 684400 (Jan. 1, 2016); DICOT 209.587-010, 1991 WL 671797 (Jan. 1, 2016). This discrepancy between Plaintiff's RFC and the latter two jobs' reasoning level is directly analogous to the discrepancy in *Thomas v. Berryhill*. While the lens inserter position's reasoning level conforms to Plaintiff's RFC, the label pinker and addresser's reasoning levels do not. Because the ALJ failed to identify and address this conflict, the Court must remand this case to SSA for further analysis.

### 2. *The ALJ committed harmless error by failing to qualify the VE on the record at the supplemental hearing.*

Plaintiff also argues that the VE was improperly questioned on the record, because the ALJ failed to ask him about his qualifications and impartiality and whether the VE had examined the record. ECF No. 14-1 at 17. Plaintiff bases this argument on HALLEX Section I-2-6-74(B), which requires that the ALJ have the VE testify on the record confirming their "impartiality, expertise, and professional qualifications" and that they "examined all vocational evidence of record." 1993 WL 751902 (June 16, 2016). As established above, HALLEX is not binding on the SSA or this Court. *See supra* Part A.

17

Plaintiff is correct that the ALJ failed to question the VE about his impartiality, expertise, qualifications, and examination of the evidence on the record. *See generally* ECF No. 11 at 93–96 (testimony of VE at hearing). At the hearing, however, Plaintiff raised no objection to these omissions. *Id.* Because HALLEX does not have the force of law, the ALJ's disinclination to follow its procedural requirements is harmless error. Accordingly, because HALLEX is not binding and Plaintiff raised no objection to the VE's testimony at the hearing, the ALJ's failure to comply with HALLEX I-2-6-74 is not a basis for remand.

## CONCLUSION

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not disabled" within the meaning of the Act from January 1, 2014 through the date of the ALJ's decision. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 19) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion as to the ALJ's ultimate disability determination. The clerk is directed to CLOSE this case.

Date: 21 October 2019

A. David Copperthite
United States Magistrate Judge

18